UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LOUISE ALBERTINE TESTA,

    Plaintiff,

        v.                                               No. 3:19-cv-00152(WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

    Defendant.

_____X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Louise Albertine Testa's, application for Title II disability insurance benefits ("DIB") and Supplemental Social Security Income ("SSI). It is brought pursuant to 42 U.S.C. §405(g).[2] Plaintiff now moves for an

---

[1] The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order remanding his case for a rehearing. [Doc. #13]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. # 14]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court grants Plaintiff's motion and remands the case for further proceedings.

## LEGAL STANDARD

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the

2

claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the

Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## I. BACKGROUND

### a. Facts

Plaintiff filed her DIB application on May 2, 2016, and SSI application on May 3, 2016, alleging an onset of disability as of December 7, 2015. Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On March 21, 2018, a hearing was held before Administrative Law Judge Louis Bonsangue ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE"), testified at the hearing. On April 4, 2018, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On December 10, 2018, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

Plaintiff was fifty years old on the alleged onset of disability date. (R. 23). She completed a high school education and can communicate in English. (R. 24). At the time of the hearing, Plaintiff was working as a crossing guard approximately 2 hours per day. (R. 18). Plaintiff's earnings in that job are not enough to reach substantial gainful activity levels, as a result, she has no past relevant work under the Social Security rules. (R.18). Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##13-1; 14-1]. The Court adopts these statements and incorporates them by reference herein.

b.  **The ALJ's Decision**

The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 7, 2015. (R. 18). At Step Two, the ALJ found Plaintiff has the following severe impairments: obesity, fibromyalgia, and osteoarthritis of the lumbar spine. (R. 18). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 19-20). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), but with the limitations described in this paragraph. The claimant could occasionally climb ramps and stairs, but she could never climb ropes, ladders and scaffolds. She could frequently balance, occasionally stoop, occasionally kneel, and occasionally crouch and never crawl. Additionally, the claimant must avoid concentrated exposure to extreme cold, humidity, vibration, moving parts and unprotected heights. Furthermore, the claimant could stand and walk, combined, only 4 hours in an 8-hour workday.

(R. 20).

At Step Four, the ALJ found that plaintiff had no past relevant work. (R. 23). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 24-25). Accordingly, the ALJ determined Plaintiff was not disabled from December 7, 2015, through the date of his decision, April 4, 2018. (R. 25).

---

[3]  Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

## II. DISCUSSION

Plaintiff raises several arguments in support of his Motion to Reverse, which the Court will address in turn.

**1. <u>The RFC</u>**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, she argues that the ALJ erred in his weighing of the opinion evidence and the characterization of the evidence. Plaintiff also maintains that the ALJ erred by failing to incorporate additional limitations into the RFC. The Commissioner responds that the ALJ properly weighed the medical opinions, and that the assessed RFC is supported by substantial evidence.

A. <u>Weighing of Opinion Evidence</u>

Plaintiff challenges the weight given to the medical opinions of Ellice Rosoff, MSW and that of the State agency medical consultant Dr. Firooz Golkar. [Doc. #14-2 at 6-10].

The treating physician rule provides that a treating source's opinion on the nature or severity of a claimant's impairments will be given controlling weight when it is well-supported by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Those factors include "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 404.1527(c)(2). After considering these factors, the ALJ is required to

"comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight allotted. *Burgess,* 537 F.3d at 129. While an ALJ's failure to provide good reasons for the weight given to a treating source's opinion is grounds for remand, *Halloran*, 362 F.3d at 33, the ALJ is not required to "slavish[ly] recite[]each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Ellice Rosoff, MSW

Plaintiff argues that the ALJ erred in assigning the opinion of Ellice Rosoff, MSW, "some, but limited weight" because "social workers are not acceptable medical sources of information." [Doc. #13-1 at 8; (R. 23)]. Ms Rosoff completed a Medical Source Statement dated January 2017, indicating that she had been providing Plaintiff with weekly therapy for approximately six months.[4] (R. 579-83). She diagnosed Plaintiff with generalized anxiety disorder and stated that Plaintiff had demonstrated a good response to treatment and was not being considered for a higher level of care. (R. 579). She reported that Plaintiff had good activities of daily living, judgment and insight; always dressed appropriately; was oriented x3; with no evidence of short or long-term memory loss, appropriate affect; normal speech, and thought content and she completed cognitive testing without error. (R. 580). Ms. Rosoff noted that Plaintiff's concentration and attention span , coping skills and ability to handle frustration appropriately, could "sometimes" be altered due to her pain. (R. 580-82). Notably, Ms. Rosoff found that Plaintiff demonstrated an "excellent ability, never a problem" taking care of personal

---

[4] Although the Medical Source Statement is signed and dated January 18, 2017, Ms. Rosoff indicated that treatment started on June 28, 2017. (R. 579-83). The Court notes that treatment was likely started in 2016. *See* R. 84-85.

7

hygiene, caring for physical needs, using good judgment regarding safety and dangerous circumstances, interacting appropriately with others, respecting/responding appropriately to others in authority, getting along with others without distracting them or exhibiting behavioral extremes, and carrying out single step instructions. (R. 581-82). Ms. Rosoff also assessed that plaintiff demonstrated "much better than average, rarely a problem" ability focusing long enough to finish simple activities or tasks and changing from one simple task to another. (R. 582).

The opinion of Ms. Rosoff, a social worker, is not covered by the treating physician rule. *See Diaz v. Shalala*, 59 F.3d 307, 309 (2d Cir. 1995). A social worker is not considered an "acceptable medical source" under the regulations. 20 C.F.R. §§416.902, 416.927, 404.1527(f); *see Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541 (2d Cir. 2011) ("the assessment by the social worker is ineligible to receive controlling weight because social workers do not qualify as 'acceptable medical source[s].'"). Rather, a social worker is an "other source" whose opinion can be evaluated "to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to function." *Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims*, SSR 06-03P (S.S.A. Aug. 9, 2006). Thus, the ALJ must consider Ms. Rosoff's opinion, but need not afford it controlling weight. [5]

Here, the ALJ did not dismiss Ms. Rosoff's opinion without consideration. On the contrary, the opinion was examined and accorded some weight consistent with the medical opinion regulations. Hernandez v. Astrue, 814 F. Supp. 2d 168, 182 (E.D.N.Y. 2011) ("[T]he

---

[5] The Commissioner points out, and the Court notes, that "Plaintiff does not raise any argument challenging the ALJ's finding that Plaintiff did not have a severe mental impairment. *See* P. Mem. 1-21. Thus, the relevance of Plaintiff's argument that the ALJ erred in the weight he accorded Plaintiff's social worker is moot." [Doc. #14-2 at 6, n. 4].

SSA may rely on 'other sources' to provide evidence of 'the severity of [a plaintiff's] impairment.' 20 C.F.R. § 404.1513(d)." Moreover, a claims communication at the initial level of review states that

> Ellise Rosa [sic] from Alternative Paths left a message stating she was next to claimant and that she told her she has a YCE apt on 9/23/16. She stated mental health conditions do[] not prevent her from working and performing adls, but the fibromyalgia is the one that currently affecting her.

(R. 84-85). The State agency physician, Dr. Julian Lev, relied on Ms. Rosoff's opinion in determining that plaintiff's psychiatric symptoms were mild and non-severe. (R. 115-116; 132-33). The ALJ assigned Dr. Lev's opinion "great weight." (R. 18-19). The mental RFC findings by the ALJ are supported by substantial evidence and the Court finds no error in the weight assigned to the opinion of Ellise Rosoff.

Dr. Firooz Golkar, State Agency Physician

Plaintiff next claims that the ALJ erred in assigning "significant weight" to State agency physician Firooz Golkar's, opinion arguing that "Dr. Golkar was missing a large portion of the medical record at the time that he issued his opinion, and he did not have the benefit of reviewing numerous physical therapy notes, … nor surgical consultation reports and accompanying objective testing." [Doc. #13-1 at 7 (citing R. 23)]. For the reasons that follow, the Court finds that the ALJ did not fulfill his duty to develop the record and that remand is warranted to obtain medical source statements from treating physicians and clinicians.

"It is the rule in our circuit that the ALJ, unlike the judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1997) (internal quotation marks omitted); *see Moreau v. Berryhill*, No. 3:17-CV-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("An ALJ in a social security benefits hearing has an affirmative obligation to develop the

9

record adequately." (internal quotation marks omitted) ). "Whether the ALJ has satisfied this obligation or not must be addressed as a threshold issue." *Moreau*, 2018 WL 1316197, at *4. "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)).

"The expert opinions of a treating physician are of particular importance to a disability determination." *Id.* at *5. "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is [the treating physician's] opportunity to develop an informed opinion as to the physical status of the patient." *Halle v. Astrue*, No. 3:11-CV-1181 (VLB), 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) (citing *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ). "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or ... by a paralegal.'" Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

On January 25, 2017, Dr. Golkar completed a Physical RFC finding that plaintiff could occasionally lift and/or carry 20 pounds, frequently lift or carry 10 pounds, stand and or walk 6 hours in an 8 hour work day; sit for 6 hours in an 8 hour workday with unlimited push and/or pull. (R. 118) The doctor assessed that plaintiff could frequently balance, occasionally climb ramps, stoop and crouch, and never climb ladders/ropes/scaffolds or crawl. (R. 118-19). No manipulative visual or communicative limitations were assessed but the doctor found that Plaintiff should avoid concentrated exposure to extreme cold, vibrations and hazards. (R. 119).

The ALJ considered this opinion and gave it significant weight. (R. 23). However, the ALJ found that Plaintiff was more limited and reflected those limitations in her RFC due to receiving "additional evidence into the record <u>after</u> Dr. Golkar made his assessment regarding the claimant's residual functional capacity (Exhibits 13F through 20F)." (R. 23 (emphasis added)). The Court finds that the ALJ's reliance on this January 25, 2017 opinion is problematic. Dr. Golkar's physical RFC was completed <u>before</u> plaintiff began treatment with neurosurgeon Dr. Joel Bauman and <u>before</u> a follow-up MRI and CT scan. Plaintiff was seen by Dr. Bauman on five occasions in 2017 beginning in March 2017 with the last appointment in February 2018. (R. 796-97 (3/3/17); 806-07 (5/18/17); 835-38 (6/15/17); 843-45 (8/11/17); 851-53 (2/13/18)). A MRI and CT scan from June 2017, demonstrated "increased uptake in the lumbar spine at L2-3 which corresponds to severe degenerative disc disease with endplate spondylosis as well as marrow edema and endplate sclerosis." (R. 837). Dr. Bauman also noted "severe change to the endplates on the recent CT scan" and a "vacuum disc phenomenon" at "L3-4 level and to a much lesser extent, the L4-5 level." (R. 835). At an appointment in June 2017, surgical options were discussed at the L2-3 level, and possibly the L3-4 level, to address the "significant amount of degenerative disc disease as well as curvature of her lumbar spine." (R. 835-36). The doctor noted, however, that "the patient still has significant degenerative disc disease at the L4-5 level, and realistically, this operation would not help with all of her back pain symptoms." (R. 836). Surgery was scheduled and then "postponed due to job responsibilities which would impact her recovery." (R. 844). The treatment records from August 2017 and February 2018, state that Plaintiff "remains quite debilitated with pain" and the doctor noted that her gait was antalgic. (R. 843, 845, 851, 853). The last progress note from February 13, 2018, states,

> Since the patient has had some gait and balance difficulties, but remains neurologically stable, I would suggest that she reattempt physical therapy working on gait, balance, as well as core strength. I think we should hold off on lumbar spinal surgery for now. I am not convinced that it would provide her as much relief as she is hoping, as I think her gait issues are multifactorial.

11

(R. 852). Dr. Bauman recommended that plaintiff reduce her weight to help with both her knee and back pain. (R. 852). Although the ALJ acknowledges that there was medical evidence of record submitted after Dr. Golkar's January 2017 opinion, the ALJ does not account for neurosurgeon Dr. Bauman's objective findings and treatment recommendations or the diagnostic MRI and CT scans from June 2017. (R. 23). Indeed, the ALJ cited to two treatment records from Orthopedist Gaurav Kapur, M.D. dated November 21, 2016 and January 19, 2017 and a treatment record from Orthopedist Stephen Fries, M.D. dated March 17, 2017, to conclude that "[t]hese generally benign findings support my conclusion that the claimant retains a work capacity despite her impairments."[6] (R. 22). The ALJ failed to address the treatment records of plaintiff's neurosurgeon or the June 2017 MRI and CT scans which show more than "benign" findings.

Further, there is no medical opinion from plaintiff's treating physicians and/or specialists addressing the functional limitations that flow from her physical impairments to support the ALJ's physical RFC findings.

> The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996); *see also Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel." (quoting *Echevarria v. Secretary of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982))).

*Richardson v. Barnhart*, 443 F. Supp. 2d 411, 423 (W.D.N.Y. 2006).

> [A]lthough the RFC determination is an issue reserved for the commissioner, see 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c), "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment

---

[6] At this appointment, Dr. Fries referred plaintiff to Neurosurgeon Dr. Bauman for an evaluation. (R. 741).

> is not supported by substantial evidence." *Dailey v. Astrue,* No. 09–CV–0099, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (quoting *Deskin v. Comm'r of Soc. Sec.,* 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)). Because there is no medical source opinion supporting the ALJ's finding that House can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c); *see also Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand).

*House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013); *Cutre v. Berryhill*, No. 17-CV-135-FPG, 2018 WL 3968385, at *3 (W.D.N.Y. Aug. 20, 2018).

Here, non-examining State agency physician Dr. Golkar provided the only medical opinion as to Plaintiff's physical impairments and functional limitations. Moreover, this opinion predates Plaintiff's treatment with neurosurgeon Dr. Bauman and the June 2017 MRI and CT scans. There are no medical opinions from any of Plaintiff's treating physicians and/or specialists assessing the severity of her impairments, including symptoms, diagnosis and prognosis, and the functional limitations that flow from her physical impairments to support the ALJ's physical RFC finding of light work with limitations. "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) (citing cases).

Accordingly, the Court finds that additional administrative proceedings are required. On remand, the ALJ should develop the record as necessary to obtain medical records and opinions as to plaintiff's functional limitations from treating and/or examining sources, conduct a proper evaluation of Plaintiff's symptoms and explain his findings in accordance with the regulations. *See Moreau*, 2018 WL 1316197, at *4 ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it

13

necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling. On remand, the Commissioner will address the other claims of error not discussed herein. *See Moreau*, 2018 WL 1316197, at *4 ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

III. **CONCLUSION**

For the reasons stated, plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #13]** is **GRANTED**. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #14]** is **DENIED**.

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to

14

enter judgment in favor of the plaintiff and close this case.

SO ORDERED, this 15th day of October, 2019, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge